IN THE

# SUPREME COURT

OF THE

## STATE OF IDAHO.

(December 31, 1921.)

FRED A. WEBER, Respondent, v. PEND D'OREILLE MINING & REDUCTION COMPANY, LTD., a Corporation; STANDARD DEVELOPMENT COMPANY, a Corporation; J. WARD ARNEY, as Administrator of the Estate of SIMON P. DONNELLY, and WILLIAM E. CLOYES, Appellants.

[203 Pac. 891.]

FOREIGN CORPORATIONS — CONTRACTS OF — RESCISSION OF CONTRACT — CANCELATION—ENJOINING SALE OF CORPORATE STOCK.

1. Contracts of foreign corporations, doing business within the state, which have failed to comply with the laws thereof with relation to foreign corporations doing business therein, are not void, but such corporations are deprived of remedy in the courts of the state to enforce them.

2. In an action brought to rescind a contract which has been executed, in whole or in part, it is essential that the parties be placed *in statu quo*. Plaintiff in such an action must allege that he is ready, able and willing to place the defendant or defendants *in statu quo*, and offer so to do, or allege sufficient equitable reasons for not doing so.

3. A party seeking rescission of a contract against another party lacking capacity to enforce the same in the courts of the state is not excused from offering to do equity on account of the incapacity of the other party to sue.

4. An assignment of error in a brief of appellant to the effect that the court erred in making a certain finding is not sufficiently

35 Idaho—1       (1)

definite to point out the ground on which the court erred. It does not call in question the sufficiency of the evidence to support the finding.

APPEAL from the District Court of the Eighth Judicial District, for Bonner County. Hon. R. N. Dunn, Judge.

Action to enjoin sale of stock. Judgment for plaintiff. *Modified* and *reversed*.

Potts & Wernette and J. Ward Arney, for Appellants.

Where there is a failure of a part of the lawful consideration, the part which fails is simply a nullity and imparts no taint to the residue. If there is a substantial consideration left, it will still be sufficient to sustain the contract. (9 Cyc. 370; 11 Cent. Dig., "Contracts and Equity," 398–402, authorities therein cited; *Desha's Exrs. v. Robinson,* 17 Ark. 228; *Case v. Grimm,* 77 Ind. 565; *Wilson v. Webster,* Morris (Iowa), 312, 41 Am. Dec. 230; *Hodgdon v. Golder,* 75 Me. 293; *Gilmore v. Aiken,* 118 Mass. 94; *Wesleyan Seminary v. Fisher,* 4 Mich. 515; *Washburn etc. Mfg. Co. v. Wilson,* 48 N. Y. Supr. Ct. 159; *Martin v. Hirst,* 6 Phila. (Pa.) 230.)

A contract can only be rescinded where it is possible to put the parties back in their original position and with their original rights. If it cannot be rescinded *in toto,* it cannot be rescinded at all, and the party complaining must be left to an action in damages. (9 Cyc. 437; *Seeby v. Hutchinson,* 9 Ill. 319, 332; *Bloomington Electric Light Co. v. Radbourn,* 56 Ill. App. 165; *Desha's Exrs. v. Robinson, supra; Gathin v. Wilcox,* 26 Ark. 309; *Burge v. Cedar Rapids etc. R. Co.,* 32 Iowa, 101; *Stoddart v. Smith,* 5 Binn. (Pa.) 355; *Keenan v. Brown,* 21 Vt. 86.)

Unless the illegal part of the contract is *malum in se,* equity will not aid a party to recover something which has moved from him under the terms of the contract when those terms have been executed. One seeking relief from an illegal contract where the illegality is *malum pro se* even then cannot have relief unless he is willing and able to do

equity on his part. (Pomeroy's Equity Jur., par. 937, p. 1985, and authorities cited.)

H. H. Taylor and E. W. Wheelan, for Respondent.

Every contract made for or about any matter or thing which is prohibited and made unlawful by any statute is a void contract, though the statute itself does not mention that it shall be so but only inflicts a penalty on the offender, because a penalty implies a prohibition thereof though there are no prohibitory words in the statute. (9 Cyc. 475, 580; *Aetna Ins. Co. v. Harvey,* 11 Wis. 394; *Chattanooga Nat. Bldg. etc. Assn. v. Denson,* 189 U. S. 408, 23 Sup. Ct. 630, 47 L. ed. 870; 3 Words and Phrases, "Enforced," and Webster's Dictionary; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; 12 R. C. L. 81; *Tarr v. Western Loan & Savings Assn.,* 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707; *Valley Lumber & Mfg. Co. v. Driessel,* 13 Ida. 662, 13 Ann. Cas. 63, 93 Pac. 765, 15 L. R. A., N. S., 299.)

This is not an action for rescission of a contract, and the defendant Standard Development Company is not entitled to be placed *in statu quo.* (*Clark v. American Dev. & Min. Co.,* 28 Mont. 468, 72 Pac. 978; *Reddish v. Smith,* 10 Wash. 178, 45 Am. St. 781, 38 Pac. 1003; *Lawrence v. Miller,* 86 N. Y. 131; *Suburban Homes Co. v. North,* 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Cook-Reynolds Co. v. Chipman,* 47 Mont. 289, 133 Pac. 694; *Fratt v. Daniels-Jones Co.,* 47 Mont. 487, 133 Pac. 700; *Anvil Mining Co. v. Humble,* 153 U. S. 540, 14 Sup. Ct. 876, 38 L. ed. 814.)

RICE, C. J.—The Pend d'Oreille Mining & Reduction Company, Ltd., is an Idaho corporation. It was organized in 1902, and on February 7, 1906, held title to certain mining claims, and mill sites and water rights in connection therewith, located in Kootenai county, Idaho. Practically all of the shares of capital stock of this corporation were at that time owned in equal amounts by respondent Weber and appellant Donnelly. On the last-mentioned date, at Chicago,

Ill., respondent entered into a contract with appellant Standard Development Company, an Arizona corporation, wherein he agreed to cause to be conveyed to the Standard Development Company all the property of the Pend d'Oreille Mining & Reduction Company, Ltd., and at least 95% of the shares of capital stock thereof, for which he was to receive the sum of $50,000 and 1,500,000 shares of capital stock of the Standard Development Company, and in addition thereto the further sum of $200,000 out of the first net earnings accruing only out of the property contracted to be conveyed. It was also agreed by the parties to the contract that respondent should have the management of the property until the sum of $200,000 was paid, with no power in the board of directors of the Standard Development Company to remove him except for cause, and providing a method of arbitration in case it was claimed that cause existed for his removal. Respondent assigned to appellant Donnelly an undivided interest in the contract and the proceeds thereof.

Appellant Standard Development Company paid to respondent the $50,000 provided for in said contract, and delivered to him shares of its capital stock of the par value of $1,450,000, claiming the right to retain the 50,000 shares, under the terms of the contract, on account of the failure of respondent to deliver all of the capital stock of the Pend d'Oreille Mining & Reduction Company, Ltd. Respondent delivered, or caused to be delivered, to the Standard Development Company, 982,000 of the total of 1,000,000 shares of the capital stock of the Pend d'Oreille Mining & Reduction Company, Ltd., and caused that company to execute a deed in form conveying the property described in the contract to the Standard Development Company. The Standard Development Company has never complied with the laws of Idaho relating to foreign corporations doing business within this state. After delivery of the deed the Standard Development Company, for a period of about two years, caused certain development work to be done upon the

mining claims. In December, 1911, the Standard Development Company distributed to its shareholders, including respondent, the stock of the Pend d'Oreille Mining & Reduction Company, in proportion to the amount of stock held by each in the Standard Development Company, with a view of causing the Pend d'Oreille Mining & Reduction Company to levy an assessment upon its shares and proceed with the development of its mining property. The respondent refused to accept the shares so distributed to him. Shortly thereafter, the board of directors of the Pend d'Oreille Mining & Reduction Company levied an assessment upon its shares of stock. A sale of the delinquent stock was advertised.

This action was instituted to enjoin the sale; to obtain a decree canceling the contract and declaring it null and void, and declaring that respondent is the owner of 490,000 shares of the capital stock of the Pend d'Oreille Mining & Reduction Company delivered to the Standard Development Company. The complaint also prayed for general relief.

Since the appeal was perfected in this case, appellant Donnelly has died, and the action has been continued in the name of J. Ward Arney, administrator of his estate.

The lower court held that all of the acts and agreements above set out were wholly void and of no force or effect, for the reason that the Standard Development Company had wholly failed, neglected and refused to comply with the laws of the state of Idaho with relation to foreign corporations doing business in this state. In so holding the court was in error. The contract was not for that reason void. C. S., sec. 4775, relating to the effect of noncompliance with the laws by a foreign corporation doing business within the state, is as follows: "No contract or agreement made in the name of, or for the use or benefit of, such corporation prior to the making of such filings as provided in sections 4772 and 4773 can be sued upon or enforced in any court of this state by such corporation."

Under this section, even if the contract had been made within the state, it would not have been void, but the corporation would be without remedy in the courts of this state to enforce it. (*Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873. And see *Colby v. Cleaver,* 169 Fed. 206; *Continental etc. Bank v. Corey Bros. Const. Co.,* 208 Fed. 976, 126 C. C. A. 64.)

The contract was not void for want of consideration. It is conceded by all parties to the action that the deed to the Standard Development Company was void; but that fact did not destroy the consideration for the contract.

The court found that the Standard Development Company acquired the stock of respondent in the Pend d'Oreille Mining & Reduction Company, through fraud, and that they organized a board of directors of the latter company with the object and intent of defrauding respondent. It is not necessary to examine the evidence to determine whether this finding is supported. Even if the contract were originally entered into by the Standard Development Company with fraudulent intent, that fact would not render the contract void.

Since the original contract was not void, but at the most only voidable, the transfer of the 982,000 shares of the capital stock of the Pend d'Oreille Mining & Reduction Company to the Standard Development Company in accordance with its terms, and the delivery of the $1,450,000 of the capital stock of the Standard Development Company to respondent, operated to transfer title thereto to the parties to whom delivered, and the $50,000 delivered by the Standard Development Company to respondent was a payment under the contract.

If this is an action to rescind the contract it is essential that the respondent place the Standard Development Company *in statu quo,* since he has failed to show any sufficient equitable reason or excuse for not doing so. Respondent has not offered to place appellant Standard Development Company *in statu quo,* and it is apparent that he cannot do so.

Counsel for respondent, however, insist that this is not an action for rescission of contract and that the procedure

relative to placing appellants *in statu quo* does not apply, stating that the statute having deprived the Standard Development Co. from enforcing this contract, they are deprived from securing any benefits under it and of any right to secure relief from the same. The maxim, he who seeks equity must do equity, is addressed to the plaintiff and not to the defendant in this character of action. (*Tarr v. Western Loan & Savings Assn.*, 15 Ida. 741, 99 Pac. 1049, 21 L. R. A., N. S., 707.) The plaintiff may not avoid doing equity because the defendant may be without right to actively pursue his remedy.

Counsel state that the theory of respondent was that the contract and agreement with the Standard Development Co. was void and therefore the original 982,000 shares of stock of the Pend d'Oreille Mining & Reduction Company, transferred by him to the Standard Development Company are in law and equity his property, and insists that the findings and decree are based upon this theory. As we have seen, this theory is not tenable. In order to illustrate the distinction between an action for rescission of contract and for relief on the ground that the purchaser has abandoned his contract, counsel cite the following cases: *Clark v. American Dev. & Min. Co.*, 28 Mont. 468, 72 Pac. 978; *Reddish v. Smith*, 10 Wash. 178, 45 Am. St. 781, 38 Pac. 1003; *Lawrence v. Miller*, 86 N. Y. 131; *Suburban Homes Co. v. North*, 50 Mont. 108, Ann. Cas. 1917C, 81, 145 Pac. 2; *Cook-Reynolds v. Chipman*, 47 Mont. 289, 133 Pac. 694; *Fratt v. Daniels-Jones Co.*, 47 Mont. 487, 133 Pac. 700; *Anvil Mining Co. v. Humble*, 153 U. S. 540, 14 Sup. Ct. 876, 38 L. ed. 814. In all of these cases the contracts which formed the basis of the action were valid and the relief sought was based thereon. The right to relief grew out of a breach of the contract by a party thereto. If it be true in this case that the Standard Development Co. has breached the contract by causing respondent to be deprived of the management of the property and the right to receive the first $200,000 of the net earnings of the company, and for that

reason respondent is seeking a cancelation of the contracts, the authorities may apply.

Respondent has not suggested that this latter is the theory of his case, and we mention it because it appears to be the only theory to which the authorities cited are applicable. In the cases of *Suburban Homes Co. v. North, supra,* and *Fratt v. Daniels-Jones Co. et al., supra,* it is held that if the action be for cancelation for breach, the question of forfeiture does not arise and is not adjudicated.

In this case the court found that "by reason of the failure of the Standard Development Company to comply with the laws of the state of Idaho, and the failure to pay plaintiff the further sum of $200,000 to be paid out of the earnings of the property conveyed, or attempted to be conveyed by the said deed, plaintiff has been deprived of his right to receive said $200,000 from the said Standard Development Company out of the earnings of the said property, or otherwise, and by reason of the failure of the said Standard Development Company to comply with the laws of the state of Idaho all payments made by said Standard Development Company under said contract have been forfeited and the plaintiff is under no obligation to return to said defendant any part of the cash consideration received by him, or any part of the shares of the capital stock of said company received by plaintiff."

Under the theory of the case we are discussing, the most that respondent would be entitled to would be a decree canceling the contract, and damages for the breach thereof in case a cause of action therefor had been alleged, but leaving the parties otherwise in the position in which they find themselves. Whenever respondent seeks the additional relief of having himself decreed to be the owner of 490,000 shares of the stock of the Pend d'Oreille Mining & Reduction Company, since the title thereto had passed to the Standard Development Company, the action necessarily becomes one essentially of rescission, and respondent must offer to do equity.

The question was raised by the pleadings, and discussed in the briefs, as to the legality of the action of the Standard Development Company in distributing the stock of the Pend d'Oreille Mining & Reduction Company among its stockholders. In view of the conclusions reached, this question becomes immaterial and will not be discussed.

The injunctive relief decreed by the court was based upon the finding that the "assessment of the stock was and is wholly void and of no force and effect, but will result in great and irreparable injury to the plaintiff." Appellants specify the finding of the court as error, but we do not think the specification is sufficiently definite to point out the ground upon which it is claimed the court erred. It is not stated that the evidence is insufficient to justify the finding, nor is it shown in what particulars the evidence is insufficient. (*Citizens' Right of Way Co., Ltd., v. Ayers,* 32 Ida. 206, 179 Pac. 954; *State v. Maguire,* 31 Ida. 24, 169 Pac. 175.)

The decree of the court enjoins the Pend d'Oreille Mining & Reduction Company from selling or disposing of any part of 305,695 shares of its capital stock by reason of the failure to pay the assessment attempted to be levied on about the second day of January, 1912. The court found that respondent is the owner of 18,000 shares, and, by inference, that he is the owner of 92,714 shares distributed to him by the Standard Development Company. The respondent sued on his own behalf only, and the injunction should not extend beyond the shares owned by him.

The judgment enjoining the sale of 110,714 shares of respondent is affirmed. In all other respects the judgment is reversed. No costs awarded.

Budge, McCarthy and Lee, JJ., and McNaughton, District Judge, concur.